

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00274-CV

_____

ROBERT WILLIAM SCOTT BAUER, Appellant

V.

JAMIE LYN BAUER, Appellee

_____

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-327827-21

_____

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

Appellant Robert William Scott Bauer (Scott) appeals the trial court's final judgment that was rendered upon a motion for entry of judgment by his ex-wife Appellee Jamie Lyn Bauer. In two issues, Scott argues that the trial court abused its discretion by rendering a final judgment (1) that was allegedly not in "strict and literal compliance" with the parties' Rule 11 settlement agreement and (2) that was rendered despite the trial court's possessing information that should have reasonably caused the trial court to inquire further about whether Scott had in fact agreed to the proposed agreed judgment that became the final judgment. Because Scott's attorney alerted the trial court, prior to the signing of the final judgment, that he was out of the country and needed additional time to review the proposed judgment, the trial court was in possession of information that was reasonably calculated to prompt the trial court to make further inquiry into the party's consent thereto. Accordingly, we hold that the trial court abused its discretion by rendering the final judgment, and we reverse the trial court's judgment and remand the case to the trial court for proceedings consistent with this opinion.

### II. Background

The parties divorced in 2012. A number of agreements were reached at the conclusion of the divorce, including that Scott would pay spousal maintenance and support, child support, and other amounts to effectuate a fair and equitable division

of the marital estate. To effectuate those agreements, Scott executed a promissory note, a guaranty, and a security pledge agreement.[1] Scott failed to pay the amounts due and owing under the note at maturity.

Jamie demanded payment under the note, but Scott failed to pay all amounts due and owing.[2] In addition, Jamie discovered that Scott had breached the security pledge agreement in numerous respects, including but not limited to failing to deliver and maintain the collateral with the escrow agent to hold in trust, failing to keep the collateral free from liens and encumbrances, and failing to notify Jamie of material changes in and to the collateral and changes related to the collateral that affected the security interest. Jamie pleaded that Scott had transferred over $1 million out of Braxton Acquisitions and into other entities controlled by Scott without informing her and had utilized Braxton Acquisitions' assets to pay numerous personal expenses.

---

[1]According to Jamie's petition, pursuant to the security pledge agreement, Scott pledged his ownership interest in Braxton Acquisitions, LLC as collateral for the note and agreed to (a) deliver and maintain the collateral with an escrow agent to hold in trust; (b) pay the debt reflected in the note; (c) "keep the collateral free from liens"; and (d) not "sell, transfer, or further encumber any of the collateral." Scott also agreed to notify Jamie of any material change in the collateral and any change that might affect the security interest. The security pledge agreement further provided, among other things, that upon the occurrence and during the continuance of a default by Scott, his rights in and to Braxton Acquisitions would immediately cease and be vested in Jamie and that his right to dividend payments from Braxton would cease and be vested in Jamie.

[2]He made two payments: one in the amount of $300,000, and the other in the amount of $204,478.24.

Jamie filed an original petition, asserting causes of action for suit on the note, suit on the guaranty, breach of the security pledge agreement, and fraudulent transfer. Scott answered with a general denial and pleaded various affirmative defenses.

The parties proceeded to trial and reached a resolution during the second day of the trial. Jamie's attorney read the agreement into the record, and each of the parties stated that he or she had agreed to the terms that were listed in the bullet points that were read on the record.

Thirty days later, Jamie filed a motion for entry of judgment that attached a proposed judgment. In the motion, Jamie's counsel noted that the parties had agreed in the Rule 11 agreement that the judgment would be entered within thirty days of the settlement. Jamie's counsel further noted that she had attempted to obtain feedback from Scott's counsel on the proposed judgment but that he had not provided any comments or revisions and had informed Jamie's counsel that he would not be able to review the documents because he was leaving for Mexico the next day.

The following morning, Scott's attorney responded by sending a letter to the trial court. In the letter, Scott's attorney acknowledged that the thirty-day time frame had passed but noted that "time was not made of the essence." He requested that the trial court defer consideration of the proposed judgment "until next week" because he was out of the country and would review and respond to Jamie's attorney upon his return. He further stated, "I anticipate the parties will submit jointly approved documents on Monday of next week." Rather than wait as Scott's attorney had

requested, the trial court signed the final judgment that Jamie had submitted that same day.[3]

Scott thereafter filed a motion to modify judgment or for new trial. The motion was overruled by operation of law, and this appeal followed.

## III. The Trial Court Possessed Information Necessitating Further Inquiry Before Signing the Judgment

In his second issue, Scott argues that the trial court abused its discretion by rendering the final judgment because the record demonstrates that Scott did not consent to the final judgment. Jamie responds that the trial court did not err by enforcing the parties' Rule 11 agreement and rendering a final judgment "even if Scott did not consent."[4] Jamie's response effectively concedes that Scott did not consent to the final judgment. Accordingly, we hold that the trial court abused its discretion by rendering the final judgment without Scott's consent.

The Dallas Court of Appeals has set forth the law applicable to the situation before us:

---

[3]The final judgment does not state that it is "Agreed as to Form and Substance" or have the attorneys' signatures.

[4]Although Jamie attempts to reframe the underlying proceeding as an enforcement proceeding, she did not follow the required steps to do so by pursuing a separate claim for breach of contract, nor did the trial court allow the parties to have full, fair discovery and to have their cases decided on the merits. *See generally Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009). Further, Jamie admits that she did not file a motion for summary judgment to enforce the parties' Rule 11 agreement, and her efforts contending that her motion for entry of judgment can be construed as a summary-judgment motion fail because, as noted in Scott's reply brief, she did not plead and prove a breach of the Rule 11 agreement.

5

A party has the right to revoke his consent at any time before the court renders judgment. *Sohocki*[ *v. Sohocki*], 897 S.W.2d [422,] 424 [(Tex. App.—Corpus Christi–Edinburg 1995, no writ)] (citing *Samples Exterminators v. Samples*, 640 S.W.2d 873, 874 (Tex. 1982) (per curiam)). "A judgment based on an agreement cannot be rendered, even if the requirements of Rule 11 are met, if the consent of one of the parties has either been withdrawn or is lacking at the time the agreed judgment is rendered; such judgment is void." *Id.* ([first] citing *Kennedy*[ *v. Hyde*], 682 S.W.2d [525,] 528–[29 (Tex. 1984)]; [and then citing] *Samples*, 640 S.W.2d at 875). When a trial court has knowledge that a party to a suit does not consent to a judgment, it should refuse to sanction the agreement by making it the judgment of the court. *Id.* (citing *Burnaman v. Heaton*, 240 S.W.2d 288, 291 (Tex. 1951)). The proper inquiry is whether the information in the trial court's possession is clearly sufficient and of such a nature as to put the court on notice that a party's consent is lacking and to require the court to make further inquiry before rendering judgment. *Id.* An agreed judgment will be set aside if rendered "when the court is in possession of information [that] is reasonably calculated to prompt the court to make further inquiry into the party's consent thereto, which inquiry, if reasonably pursued, would disclose the want of consent." *Burnaman*, 240 S.W.2d at 291–92[.]

*Cooper v. Cooper*, No. 05-20-00507-CV, 2021 WL 1747856, at *3 (Tex. App.—Dallas May 4, 2021, no pet.) (mem. op.).

Here, both Jamie's motion to enter judgment and Scott's attorney's letter put the trial court on notice that Scott had not reviewed, much less consented to, the proposed final judgment that Jamie had submitted to the trial court. This information was clearly sufficient and of such a nature as to put the trial court on notice that Scott's consent was lacking and to require the trial court to make further inquiry before rendering judgment. *See id.*; *Le Jeune v. Robbins*, No. 10-16-00360-CV, 2021 WL 824991, at *2–3 (Tex. App.—Waco Mar. 3, 2021, no pet.) (mem. op.); *Cantu v. Mercy Health Ctr.*, No. 04-06-00010-CV, 2006 WL 3085703, at *3–4 (Tex. App.—San

6

Antonio Nov. 1, 2006, no pet.) (mem. op.). The record does not reflect that the trial court held a hearing or made any inquiries; instead, the record reflects that the trial court signed the proposed judgment submitted by Jamie several hours after Scott's attorney's letter was filed. Based on the record before us,[5] we sustain Scott's second issue.[6]

## IV. Conclusion

Having sustained Scott's second issue, which is dispositive of this appeal, we reverse the trial court's final judgment and remand the case to the trial court "with instructions to enter an agreed judgment in strict or literal compliance with [the] parties' Rule 11 [s]ettlement [a]greement and only with consent of all parties at the time the judgment is entered."[7]

/s/ Dabney Bassel
Dabney Bassel
Justice

Delivered: February 8, 2024

---

[5]Our holding is limited to the specific facts presented here and should not be read to excuse counsel from reviewing documents in a timely manner, nor should it be extrapolated to require trial courts to inquire any time that counsel asserts that he or she has not reviewed the documents without providing further explanation for such failure.

[6]Because this issue is dispositive of Scott's appeal, we need not address his first issue challenging terms that were added to or omitted from the final judgment. *See* Tex. R. App. P. 47.1. Furthermore, although Scott asks that we take judicial notice of (1) the clerk's file for the parties' family-law case and (2) the contents of the Tarrant County Clerk's property records, we decline to do so as judicial notice of such records was not necessary to dispose of this appeal.

[7]This is the relief that Scott prayed for on appeal, and we therefore limit the remand to the relief that he specifically requested.